The next matter, number 151395, United States v. Brima Wurie Mr. Minister, good morning. Take your time. Good morning, Your Honors. Judith Meisner representing Brima Wurie. I'd like to address the argument concerning the impact of Beckles on the residual clause, because that is the underlying predicate for this appeal. When this appeal started, the government and the defense were both arguing that the residual clause fell under Johnson 2. But since Beckles, that has changed. We agree that Beckles holds that the residual clause is not unconstitutionally vague, but Beckles does not address how you determine whether a particular offense is or is not a crime of violence under the residual clause. But our circuit precedent did, and to the extent your... I mean, in many ways, you would say we've already addressed all of these questions, and in Judge Howard's recent opinion, we've addressed the arguments you're making here, and you're asking us to depart from circuit precedent. And this is a guidelines case for those in the audience, as opposed to a statutory case, right? This is a guidelines case. Yeah. And I think that that makes a difference, because Beckles does not tell you how you apply... Beckles says that the residual clause cannot be challenged as unconstitutionally vague. Beckles does not tell you how you interpret or apply that language of the residual clause. And that language is the same language that the Supreme Court in Johnson described, as Judge Torolla said earlier, as suffering from hopeless indeterminacy, guesswork and intuition, a judicial morass, a black hole, frustrates any effort to impart some sense of order and direction, yields anything but even-handed, predictable or consistent results, and is nearly impossible to apply consistently. Well, that logic just is an argument that Beckles is inconsistent with Johnson. Well, it's raising a different question. I think that Beckles didn't address what you do now that they have held the residual clause still applies. Right, but we've got hundreds, probably thousands of cases in which courts have roughed out how you do it, and there's nothing in Beckles that says change that. But there's nothing in Beckles that says that you ignore the Supreme Court decision that not only describes the language in that way, but also overrules James and Sykes, which set out the analysis that this Court and most other courts used in defining and interpreting and applying the residual clause. That argument, I'm sorry, captured my attention in the brief, but then the more I thought about it, when I went back and looked at the case, it doesn't seem to say at all that they're rejecting those tests. They're simply showing that those tests, when applied, don't provide the clarity. It was the tests don't provide a device upon which that facially ambiguous, vague argument, the language can have clarity added to it. It doesn't seem to me that they reject the tests. Well, if they're saying that the tests cannot be used to clarify the language, then I would suggest that they are rejecting using those tests to define the residual clause. Only if you deem Beckles, in effect, inconsistent with Johnson. Well, it's not addressing the question. Just as the Supreme Court has not addressed many questions arising from its initial case law interpreting the ACCA and the residual clause, I think they left this as another unanswered question that the lower courts now have to address. And I think that if you look at the requirement from Ball and other cases that the district court has to begin all of its sentencing proceedings by correctly calculating the guideline range, and you say that the residual clause language is this hopeless morass that cannot be accurately determined or consistently determined, you have no ability to use the residual clause to calculate the guideline range, and that that would be the kind of procedural error that Gall and Molina-Martinez are talking about. And this court said in Faust that you need a degree of certainty  So post-Johnson, the required degree of correct calculation and certainty simply can't be met by the residual clause, and it would be procedural error. And I would suggest that the rule of lenity does support that kind of interpretation here because we are looking at language that the Supreme Court repeatedly described in Johnson as being hopelessly ambiguous. Well, we've already heard that argument, and we rejected it in Thompson and some of the other cases. I'm just curious. If this were, as you're arguing, not qualifying under the guidelines, what difference would it make in the sentence he received? We don't know. I mean, the guideline range itself would change. The career offender guideline range was 210 to 262 months. This was a case on remand. The guideline range for the simple amount of drugs for the count of conviction was 46 to 57. There were enhancements that were added on for the offenses that had been vacated, and the non-career offender with all of those enhancements was 168 to 210. So there is a difference in the guideline range. And this court has said in McGee and Rita and Taylor that where you have an error in calculating the guidelines, even though you recognize the sentence may well be the same, that it's appropriate to remand it to the district court for its determination. And so that's why there would be a difference in the classification as a... Assuming a guidelines error. Assuming a guidelines error. Okay. I'd like to also address the argument that it would be appropriate to remand in light of the guidelines amendment 798 that was not in effect at the time of sentencing. It was not retroactive, but could affect the district court's determination of appropriate sentence. This court has done that in Godin and Arendt. Yeah, that was a long time ago. Since then, in your precise situation, we've not done that. No, I think that my situation here, I think, is precisely the situation in Godin and Arendt. You had the Mr. Worry was sentenced in March of 2015. Amendment 798 was first proposed in August of 2015 and was promulgated in January of 2016 and effective in August of 2016. So this is precisely the situation in Godin and Arendt where the amendment was not even promulgated, was not even proposed at the time of the sentencing. And unlike Adams, who has no ability for the argument to be... The argument was not made to the district court because it wasn't available. It's a difference that concerns me, so if you could address that. You're obviously right on the chronology. But in Godin and Arendt, we had a very simple mechanistic change. Is it two offenses or is it one? The new change says it's one. So we go back and all the trial judge needs to say is, now that I know that the sentencing commission, at least forward-going in the future, is going to treat this as one rather than two, should that affect my judgment in fixing the sentence finally? And done. Here, though, this is more like the Meadows case in which we did not send back a change for that because it wouldn't be that easy application. If we sent this back, you would get into a long decision about whether reckless ABDW was a crime of violence under the force clause. Is it divisible? There would potentially be a need for Shepard documents to be brought in if it is divisible. And we said in Meadows, in that type of situation, we're not sending something back. So it does seem to me that if we sent this back, we would be starting an elaborate proceeding that may or may not end up getting you where you would ultimately like to be. I suppose how elaborate the proceeding would be will depend in part on how many of these issues have been resolved by this court before then. If it's still divisible, no matter how we decide the recklessness issue, you'd still have to go back for a divisibility inquiry, right? Yes, but Shepard documents either exist or do not exist and are fairly clear. But then you'd also have to look at the ADPO. Yeah, which is the same issue that was presented in Faust. Thank you. Good morning again. Good morning again, Judge Sherry. I may have pleased the court. Mark Wendelvin again on behalf of the United States. I could take the second issue first because I think there are any number of differences as to why this court should not follow the Gideon and Arendt approach. I won't belabor the Dillon case, but I do think Dillon calls those decisions into question because the Supreme Court in Dillon It's not so clear. Well, the court was responding to the dissent, which was saying even in a Section 3582C proceeding, because the guidelines were rendered advisory, at the end of the day, the district court should engage in a full-fledged resentencing. And in the passage we've quoted, the court rejected that and said even following Booker, there are some things the Sentencing Commission can do that are binding on the court and no one disputes that its retroactivity determinations are binding. But Judge Kayada has just said, apart from Dillon, that we haven't been doing it. And so you seem to be urging us to reach out for an issue and decide it which will benefit the government, but which is not at all necessary. It isn't. And Judge Lynch, we've presented several issues, and I agree you don't need to reach that issue. Why don't we? And the issue you raised, Judge Kayada, is exactly right. In fact, I think to some extent my friend's argument on the first point is at war with the second, because her argument on the first point is that notwithstanding Beckles, because of Johnson 2, this court has to basically consider all of these crimes afresh under the guidelines and all of its prior decisions no longer have effect. And yet on the remand for resentencing under Amendment 798, if that were in fact the case, then it would be precisely the situation, or a comparable situation, that this court confronted in Matos when it said that Gadeen and Arendt are not applicable when you have a situation where it's not just sort of some kind of almost mechanistic change for the district court to make. Gadeen itself also noted that the Sentencing Commission understandably, when it makes a retroactivity determination, is concerned about the hundreds or sometimes thousands of cases that are in the pipeline. Gadeen and Arendt, though, did remand for resentencing in those cases. This court has not done so since. And that is far removed from the situation which confronts the court now. The number of defendants who have challenged guideline sentences, whether career offender or under 2K2.1, is numerous. And I would suggest what my friend is asking is basically that the Gadeen and Arendt approach be mainstream. That in any case in which a guideline amendment that has been deemed non-retroactive, but nonetheless has been made at the time of a direct appeal, this court should adopt that approach. I would suggest that that would impose a huge burden on the district courts and will result itself in disparity. Because some district courts undoubtedly will say the Sentencing Commission has made its mind on retroactivity. I'm not going to change the sentence. Other judges might feel free to revise their sentence. And in addition, this also is factually different from Gadeen and Arendt in the sense that the defendants in both of those cases were sentenced at the very bottom of what the courts acknowledged was the properly calculated advisory guideline range. In this case, by contrast, the guideline range was 210 to 262 months. It was capped by the statutory maximum, so in fact was 210 to 240 months. But the district court varied downward to 168 months. The bottom of the guideline range, as my friend acknowledges, if he had not been deemed a career offender. So I think that's an additional reason why Gadeen and Arendt aren't appropriate here, because the district court already has exercised its discretion in downwardly varying. So for all those reasons, I don't think that the Gadeen and Arendt remand would be appropriate in this case or in other cases in which a defendant has challenged their guideline sentence on Johnson grounds. On the first issue, in our view, this court's precedents upholding the defendant's various convictions as proper crimes of violence under the guidelines remain controlling. The Supreme Court in Johnson 2 did identify the ordinary case analysis as one part of its conclusion as to why the residual clause of the ACCA was unconstitutionally vague. It was only one part of its analysis, and the court ultimately said that the clause was unconstitutionally vague because it failed to both give fair notice to defendants and led to arbitrary enforcement by judges. In Beckles, we now know that the court has said that at least the former, the fair notice to defendants is not at issue in a guidelines case, and I would note that there's nothing in Johnson itself that suggests that it was overruling the ordinary case analysis in all of its different manifestations. If that were the case, and this court hasn't decided, Johnson applies either to Section 16A or 924C, but if that were the case, it would mean that the ordinary case analysis would have been overruled for those statutes as well, even though those statutes do not have the enumerated crimes in their respective residual clauses. And again, I'm aware of no court that has said post-Johnson, too, that that case has overruled the ordinary case analysis as applied or utilized in context other than the residual clause of the ACCA. So for all those reasons, I respectfully ask the court to affirm the judgment. Thank you.